IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CALVIN FINNIE,

      Plaintiff,

v.

                              CIVIL ACTION NO.
                              1:16-CV-02659-AT-LTW

NANCY A. BERRYHILL, Acting of
Commissioner of Social Security,[1]

      Defendant.

**FINAL REPORT AND RECOMMENDATION ON AN
APPEAL FROM A SOCIAL SECURITY DISABILITY ACTION**

      Plaintiff seeks  Title XVI Supplemental Security Income ("SSI") under the Social Security Act ("the Act"), alleging disability due to blindness in his left eye, a bullet in his spine, a right hand injury, heart disease, chronic back pain, numbness in his arms and fingers, and high blood pressure.  (Transcript ("Tr.") 310).  Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied Plaintiff's claim.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff protectively filed an application for SSI on May 3, 2011, alleging disability beginning on January 2, 2010.  (Tr. 13).  After that application was denied initially and on reconsideration, Plaintiff appealed to an Administrative Law Judge ("ALJ"), who denied Plaintiff's claim on March 23, 2013, finding Plaintiff was not disabled.  (Tr. 20, 80-90).  Plaintiff appealed the ALJ's decision to the Appeals Council ("AC"), which remanded the case for further action.  (Tr. 96-99).  The ALJ held another hearing on July 24, 2014.  (Tr. 20, 41-72).  After the hearing, the ALJ issued a partially favorable decision on November 21, 2014, finding Plaintiff was disabled beginning on November 17, 2012,[2] but not before that date.  (Tr. 20-33).  Plaintiff filed a request for review, which the AC denied on May 25, 2016, rendering the ALJ's decision final.  (Tr. 5-10).  Plaintiff then appealed the decision to this Court.  (Doc. 4).  This case is now before the undersigned upon the administrative record and the parties' pleadings and briefs, and is ripe for review pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, and this action be **DISMISSED WITH PREJUDICE**.

## I.   STANDARD FOR DETERMINING DISABILITY

An individual is considered to be disabled for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[2] On November 17, 2012, Plaintiff's age category changed to advanced age.  (Tr. 31).

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities that are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his or her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1209 (11th Cir. 1983). The claimant bears the initial burden of establishing the existence of a "disability" by demonstrating that he or she is unable to perform his or her former type of work. <u>Id.</u> Once the claimant has met this burden, the burden shifts to the Commissioner to show that, considering the claimant's age, education, work experience and impairment, there are some other types of jobs that exist in the national economy that the claimant can perform. <u>Id.</u> The overall burden, however, rests upon the claimant to prove that he or she is unable to engage in any substantial gainful activity that exists in the national economy. <u>Id.</u> As summarized below, a five-step sequential analysis must be used when evaluating a disability claim.

(1)    The Commissioner must determine whether the claimant is currently working; if so, the claim is denied.

(2)    The Commissioner must determine whether the claimed impairment is severe; that is, whether the impairment or combination of impairments

3

significantly limits the claimant's physical or mental ability to do basic work activities; if not, the claim is denied.

(3)     The Commissioner must determine whether the impairment equals or exceeds in severity certain impairments described in the impairment listings in the regulations; if it does, the claimant is automatically entitled to disability benefits.

(4)     The Commissioner must determine whether the claimant has sufficient residual functional capacity to perform past work; if so, the claim is denied.

(5)     The Commissioner must determine, on the basis of the claimant's age, education, work experience, and residual functional capacity, whether the claimant can perform any other gainful and substantial work within the economy; if so, the claim is denied.

See 20 C.F.R. §§ 404.1520-404.1576.

## II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE ALJ

The ALJ made the following findings of fact and conclusions of law:

(1)     The claimant has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. §§ 416.971 et. seq.).

(2)     Since the alleged onset date of disability, January 2, 2010, the claimant has had the following severe impairments: gastroesophageal reflux disease ("GERD"); blind in the left eye, spondylosis, degenerative disc disease, polysubstance abuse in early remission, and major depressive disorder (20 C.F.R. § 416.920(c)).

(3)     Since the alleged onset date of disability, January 2, 2010, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

(4)     Since January 2, 2010, the claimant has the residual functional capacity ("RFC") to perform less than a full range of work as defined in 20 C.F.R. § 416.967(b).   The claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can sit and stand for six hours out of an eight-hour workday with normal breaks.  The claimant can perform occasional to never pushing and pulling with the right upper extremity.  The

4

claimant can perform occasional foot controls with the right lower extremity. The claimant can never climb ladders, ropes, or scaffolds. The claimant is able to occasionally climb ramps or stairs. The claimant is able to occasionally balance, kneel, crawl, stoop, and crouch. The claimant can perform work that does not require repetitive rotation with his neck. The claimant is able to occasionally reach overhead with the right extremity with the assistance of his left extremity, but can frequently handle and finger objects with the right upper extremity. The claimant should avoid concentrated exposure to extreme vibrations, hazardous machinery, unprotected heights, and operational control of moving machinery that would require the use of the right upper extremity. The claimant is also limited to occupations that do not require sight of the left eye. The claimant is limited in his ability to use fine detailed vision in the right eye. The claimant can perform work that is limited to simple, routine, and repetitive tasks or instructions. The job must be with occasional decision making and few changes in the work setting and not at productions pace. The claimant can have occasional interaction with the general public, co-workers, or supervisors. The claimant would also be off task three percent of the time.

(5)   Since January 2, 2010, the claimant has been unable to perform any past relevant work (20 C.F.R. § 416.965).

(6)   Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On November 17, 2012, the claimant's age category changed to an individual of advanced age (20 C.F.R. § 416.963).

(7)   The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).

(8)   Prior to November 17, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not claimant has transferable job skills. Beginning on November 17, 2012, the claimant has not been able to transfer job skills to other occupations  (See SSR 82-41, 20 C.F.R. pt. 404, subpt. P, app. 2).

(9)   Prior to November 17, 2012, the date the claimant's age category changed, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 416.969 and 416.969(a).

(10)    Beginning on November 17, 2012, the date the claimant's age category changed, considering the claimant's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that claimant can perform (20 C.F.R. §§ 416.960(c) and 416.966).

(11)    The claimant was not disabled prior to November 17, 2012, but became disabled on that date and has continued to be disabled through the date of this decision (20 C.F.R. § 416.920(g)).

(12)    The claimant's substance use disorder(s) is not a contributing factor material to the determination of disability (20 C.F.R. § 416.935).

(Tr. 23-32).

## III.   CLAIMS OF ERROR

Plaintiff alleges the decision of the Commissioner is in error because the ALJ failed to properly evaluate Plaintiff's credibility, resulting in a finding that is not supported by substantial evidence.

## IV.   SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of social security benefits by the Commissioner is limited.  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  The only function of the Court is to determine whether there is substantial evidence in the record to support the findings and decision of the Commissioner and whether proper legal standards were applied in the fact-finding process.  The findings of the Commissioner are conclusive if supported by substantial evidence and proper legal standards were applied.  Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v.

6

Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, our review of the ALJ's application of legal principles is plenary. Walker, 826 F.2d at 999.

## V.   **BACKGROUND FACTS**

Plaintiff was fifty-three years old on November 17, 2012, the date the ALJ found him disabled. (Tr. 307). Plaintiff, a high school graduate, has past relevant work as a kitchen helper, apartment maintenance repairer, and landscape worker. (Tr. 31, 65-66, 311-12). According to Plaintiff, he has not worked since 2008; he has been disabled since January 2, 2010; and he is unable to work due to blindness in his left eye, a bullet in his spine, a right hand injury, heart disease, chronic back pain, numbness in arms and fingers, and high blood pressure. (Tr. 28, 310). Plaintiff also has a history of polysubstance abuse. (Tr. 24, 47, 877, 1062). The ALJ found Plaintiff's severe impairments were GERD, blindness in the left eye, spondylosis, degenerative disc

7

disease, polysubstance abuse in early remission, and major depressive disorder.  (Tr. 23).

The ALJ proceeded to determine Plaintiff's RFC, finding that since  January 2, 2010, Plaintiff had the RFC to perform less than a full range of light work, except he can only lift and carry twenty pounds occasionally and ten pounds frequently; he can sit and stand for six hours out of an eight-hour workday with normal breaks; he can perform occasional to never pushing and pulling with the right upper extremity; he can perform occasional foot controls with the right lower extremity; he can never climb ladders, ropes, or scaffolds; he is able to occasionally climb ramps or stairs; he is able to occasionally balance, kneel, crawl, stoop, and crouch; he can perform work that does not require repetitive rotation with his neck; he is able to occasionally reach overhead with the right extremity with the assistance of his left extremity, but can frequently handle and finger objects with the right upper extremity.  (Tr. 25-26).  The ALJ also found Plaintiff should avoid concentrated exposure to extreme vibrations, hazardous machinery, unprotected heights, and operational control of moving machinery that would require the use of the right upper extremity; he is also  limited to occupations that do not require sight in his left eye; he is limited in his ability to use fine detailed vision in the right eye; he can perform work that is limited to simple, routine, and repetitive tasks or instructions; any job he has must be with occasional decision making and few changes in the work setting and not at productions pace; he can only have occasional interaction with the general public, co-workers, or supervisors; and Plaintiff can expected to be off task three percent of the time. (Id.).

AO 72A
(Rev.8/82)

The ALJ found that since January 2, 2010, Plaintiff was unable to perform his past relevant work.  (Tr. 30).  In determining whether there were jobs that Plaintiff could perform, the ALJ relied on the testimony of a vocational expert ("VE") to determine the extent to which Plaintiff's limitations eroded the occupational base.  (Tr. 31).  The VE testified that given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform the requirements of occupations such as a collator operator.  (Tr. 32).  The ALJ then found that prior to November 17, 2012, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (Tr. 31-32).  Therefore, the ALJ found Plaintiff was not disabled prior to November 17, 2012.  (Tr. 32).  After November 17, 2010, the date Plaintiff's age category changed (from closely approaching advanced age to advanced age), the ALJ found there were no jobs that exist that Plaintiff could perform.  (Id.).  Based on the foregoing, the ALJ found Plaintiff was disabled on November 17, 2012, but not before that time.[3]  (Id.).

The medical evidence has been summarized in the body of the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## VI.   ANALYSIS OF CLAIMS OF ERROR

### A.   The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff contends that the ALJ's reasons for rejecting his credibility are not supported by substantial evidence. Specifically, Plaintiff argues the ALJ's reasons for

---

[3] The ALJ also found Plaintiff's alcohol use was not a contributing factor material to the determination of disability.  (Tr. 32).

9

diminishing his credibility are improper because the ALJ relied on (1) Plaintiff's activities of daily living; (2) Plaintiff's lack of surgical treatment for his physical impairments; and (3) Plaintiff's lack of mental health hospitalization.  In response, the Commissioner contends that Social Security regulations specifically instruct the ALJ to consider Plaintiff's daily activities, treatment history, and his failure to take prescribed medications when evaluating complaints of disabling subjective symptoms.  See 20 C.F.R. § 416.929(c)(3)(i), (v)-(vii).  The Commissioner also contends that the ALJ's observations regarding these factors are supported by the record medical evidence, and the ALJ advanced additional factors in support of the credibility determination that Plaintiff has not challenged on review.  This Court agrees with the Commissioner.

When a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms, courts use the "pain standard," which requires (1) evidence of an underlying medical condition; and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (internal citation omitted).  If the claimant meets the pain standard, the Commissioner must consider the claimant's subjective testimony of pain.  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  See Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

AO 72A
(Rev.8/82)

When the record shows that the plaintiff has a medically determinable impairment that could reasonably be expected to produce his symptoms, such as pain, the ALJ must then evaluate the intensity and persistence of the symptoms so that he can determine how the symptoms limit the plaintiff's capacity for work. Klawinski v. Comm'r of Soc. Sec., 391 F. App'x 772, 776-77 (11th Cir. 2010); 20 C.F.R. § 416.929(c)(1). In making this evaluation, the ALJ considers the entire record, including objective medical evidence, the plaintiff's history, and statements by the plaintiff and his doctors. Klawinski, 391 F. App'x at 776-77. Objective medical evidence consists of evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption. 20 C.F.R. § 416.929(c)(2). While objective medical evidence is a useful indicator, the ALJ is not permitted to reject the claimant's statements about the intensity and persistence of his pain and other symptoms or about the effect symptoms have on his ability to work solely because the objective medical evidence does not substantiate the claimant's claims. 20 C.F.R. § 416.929(c)(2). Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the ALJ is also required to consider any other information the claimant submits, such as the claimant's daily activities; the location, duration, frequency, and intensity of the pain and other symptoms; the effectiveness and side effects of medications; precipitating and aggravating factors; and other treatments and measures that the claimant has taken to relieve the symptoms. 20 C.F.R. § 416.929(c)(3). In doing so, it is appropriate for the

11

ALJ to evaluate the claimant's statements about pain, inconsistencies in the evidence, and the extent to which there are conflicts between the claimant's statements and the rest of the evidence, including the history, the signs and laboratory findings, statements by treating and non-treating sources, or other persons about how the symptoms affect the claimant. 20 C.F.R. § 416.929(c)(4). After considering a claimant's complaints of pain, the ALJ may reject them as not credible and that determination is reviewed for substantial evidence. East v. Barnhart, 197 F. App'x 899, 904 (11th Cir. 2006); Marbury, 957 F.2d at 839; 20 C.F.R. § 416.929(c).

Plaintiff argues the ALJ's reasons (Plaintiff's activities of daily living, his lack of surgical treatment for his physical impairments, his lack of mental health hospitalization, and failure to take medication) for discrediting his allegations were not supported by substantial evidence. Although Plaintiff tries to poke holes into individual aspects of the ALJ's reasoning, the record as a whole, as relied upon by the ALJ, supports her credibility determination. Therefore, the issue before the Court is not whether there is evidence to support Plaintiff's testimony, but whether there is substantial evidence to support the ALJ's credibility determination. See Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence."). Having reviewed the record evidence, the Court agrees with the Commissioner – the ALJ's credibility determination is supported by substantial evidence, including the evidence cited by the Commissioner. Further, what the Plaintiff is asking the Court to do here is

12

reweigh the evidence, and the Court declines to do so.

### 1.   The ALJ's Reliance on the Medical Record

The ALJ noted Plaintiff alleged he was disabled due to GERD, blindness in the left eye, neck pain due to spondylosis and degenerative disc disease, polysubstance abuse in early remission, and major depressive disorder.  (Tr. 26).  The ALJ observed that Plaintiff's allegations were not substantiated by the medical evidence of record.  (Id.). The ALJ initially pointed to and relied on the opinions of Drs. Daniel Hennessey and K. Glass, both State agency medical consultants who opined that Plaintiff could perform work activity in spite of his impairments.  (Tr. 26).  Specifically, the ALJ observed that Dr. Glass opined that Plaintiff could frequently lift ten pounds; he could sit, stand, and walk for six hours out of an eight-hour day; but he was limited in his ability to push and pull with his upper extremities.  (Id.).  Dr. Glass opined that Plaintiff could still perform a range of light work.  (Id.).  Although Dr. Hennessey opined that Plaintiff was restricted in his vision, the ALJ noted neither Dr. Glass nor Dr. Hennessey opined that Plaintiff possessed any postural, manipulative, environmental, or communicative limitations. (Id.).

In addressing Plaintiff's allegations of disability resulting from vision issues, the ALJ pointed to a vision exam administered by Dr. Debbie Brewer, a consultative examiner, that revealed Plaintiff possessed 20/20 uncorrected vision in his right eye and was blind with uncorrected vision in his left eye.  (Tr. 27).  Due to left eye blindness, Dr. Brewer opined Plaintiff would have difficulties reading, performing some visual tasks,

and judging distances.  (Id.).  With regard to Plaintiff's spondylosis, the ALJ noted x-rays of Plaintiff's neck depicted evidence of spondylosis as his disc narrowed with obscured enplates in the C5-T1 regions of the spine.  (Id.).  Although Plaintiff complained of neck pain, the ALJ noted Plaintiff did not experience any decreased range of motion in his cervical spine and he was not in any acute distress.  (Id.).  The ALJ observed that a physical examination of Plaintiff was essentially normal as there were little to no abnormalities in his cardiovascular, respiratory, or neurological systems; he was able to climb on and off the examination table without difficulty even though he experienced decreased motor strength in his upper and lower extremities.  (Id.).  Overall, Dr. Brewer noted Plaintiff's impairments "could" cause limitations in his ability to participate in prolonged standing and walking; heavy lifting, pushing, and pulling; bending; stooping; climbing stairs; reaching with the right upper extremity.  (Id.).  After assessing limitations resulting from Plaintiff's vision and neck pain due to spondylosis, the ALJ observed that Dr. Brewer did not preclude Plaintiff from all work activity.  (Id.).

In further addressing Plaintiff's vision and degenerative disc disease impairments, the ALJ also relied on the results of another eye examination and a magnetic resonance imaging ("MRI") of Plaintiff's cervical spine.  (Tr. 27).  The ALJ noted an eye examination by Dr. Althea L. Turk, an ophthalmologist, determined that Plaintiff's left eye vision was reduced, and that he possessed 20/30 right eye vision with correction and 20/50 vision in his left eye with correction.  (Id.).  Dr. Turk noted Plaintiff was able to maneuver without any problems, and opined that Plaintiff did not require any assistance

14

in performing his activities of daily living.  (Id.).

The ALJ also discussed the results of a MRI of Plaintiff's cervical spine that revealed evidence of multilevel degenerative disc changes with moderate spinal canal stenosis at the C4-C5 level with facet arthropathy and frontal stenosis at the C4-T1 levels. (Tr. 27).  The ALJ noted Plaintiff reported to Grady Health System with complaints of back pain, but on October 5, 2012, an objective physical examination revealed Plaintiff possessed a normal range of motion in his neck as well as his remaining joints; his neurological exam was normal; there was no evidence of swelling, edema, deformity, or muscle spasms.  (Id.).

In addressing Plaintiff's allegations of disabling limitations resulting from his GERD impairment, the ALJ observed that Grady treatment notes reflect Plaintiff experienced nausea, vomiting, gastric and abdominal pain later determined to be GERD. (Tr. 27).  Plaintiff rated his pain levels as a six out of ten, with ten being the worse pain. (Id.).  Despite Plaintiff's pain rating, the ALJ noted Plaintiff's treatment notes classified Plaintiff's pain levels to be moderate.  (Id.).  The ALJ also noted Plaintiff did not undergo any surgical treatment for his GERD impairment; instead Plaintiff was prescribed medications that included, but were not limited to Vicodin and Percocet.  (Id.).  The ALJ further noted that x-rays of Plaintiff's chest dated May 8, 2014, did not demonstrate evidence of acute cardioplumonary processes.  (Tr. 28).

On July 2, 2014, Plaintiff presented to Grady with complaints of right side weakness, suspected of being a simple partial seizure, but an electroencephalogram

(EEG) of Plaintiff was relative normal.  (Id.).  Similarly, a CT scan of Plaintiff's brain did not depict any evidence of an abnormality.  (Id.).  The ALJ also noted Plaintiff possessed four out of five muscle strength in his right arm and five out of five muscle strength in his right leg.  (Id.).  Plaintiff was not in acute distress and he reported that his condition was improving.  (Id.).  In a letter dated July 15, 2014, Dr. Punita Kaveti, a treating physician, indicated that Plaintiff continued to have some residual weakness in his right hand; he would not be able to function properly until he gained some strength back; he was getting physical therapy for the same condition; and his improvement will determine whether he can be cleared to go back to work.  (Tr. 2138).  The ALJ noted Dr. Kaveti did not permanently preclude Plaintiff from all work activity.

Lastly, the ALJ reviewed the evidence in the record regarding Plaintiff's depression and polysubstance abuse and observed that there were very few treatment records.  (Tr. 28).  The ALJ noted Dr. Janet Telford-Tyler opined that Plaintiff did not possess any marked or extreme limitations due to his mental impairments.  (Id.).  On February 10, 2010, Dr. Anna Kho encouraged Plaintiff to cease with all drug and alcohol use.  (Id.).  The ALJ also observed that Plaintiff's treatment notes reflect that Plaintiff was hospitalized for cocaine induced chest pains.  (Id.).  On January 10, 2012, Plaintiff's treatment notes indicated that he experienced suicidal ideations and he reported symptoms such as irritability, sleep disturbance, and hallucinations.  (Id.).  The ALJ noted, however, that Plaintiff's treatment notes reveal he continued to smoke cigarettes, drink alcohol, and used drugs even though he was aware of his physical and mental

16

impairments; and on September 24, 2013, Plaintiff rejected Dr. Kaveti's offer to provide assistance to help him quit smoking.  (Id.).

> 2.     The ALJ's Review of and Reliance on Plaintiff's Testimony

The ALJ reviewed and considered Plaintiff's testimony at his initial hearing held on December 19, 2012. (Tr. 28, 2141).  At that hearing, the ALJ noted Plaintiff testified he has not worked since 2008.  (Tr. 28).  Plaintiff also testified that he is unable to push or pull objects; he can only sit for thirty to forty-five minutes before he has to stand up to relieve pain that shoots up his back and hips; he can only stand for forty-five minutes to an hour with his back propped up against a wall before he has to sit down again, he can only stand for thirty minutes without a cane; he can only lift and carry a maximum of five pounds or less; he cannot hold anything with his right hand; and he is  unable to push or pull a shopping cart.  (Tr. 28, 2155-57).  Plaintiff also testified that after being hit in his left eye with a pipe, he has no vision ("cannot see  a thing") in his left eye; and, if the sun is out or if he is looking at small letters, he needs glasses to see because the vision in his right eye is blurry.  (Tr. 29, 2160).  Plaintiff further testified that he experiences neck pain, crying spells, and suicidal ideations; he admitted using meth and cocaine, and that he refused to take his medication for depression.  (Tr. 29, 2159-2160, 2164-65).

During Plaintiff's supplemental hearing on July 29, 2014, Plaintiff alleged that he experiences pain in his lower back, in all of his right side, and in his lower right leg (Tr. 55); he does not try to walk without a walker (Tr. 57); he can only walk a block or two with a walker before he needs to take a break because of pain (Tr. 29, 56); he can only

17

stand for seven to eight minutes because of pressure in his lower back (Tr. 57); he can only sit in a high chair for thirty minutes with a pillow (Tr. 57-58); he cannot sit in a regular chair because he cannot get up as his back will lock up (Tr. 58); he is unable to grip or lift anything with his right hand (Tr. 59); he takes anti-depressants (Tr. 59-60).

The ALJ also noted Plaintiff testified that he is unable to hold his right hand up without the assistance of using his left hand; he is unable to lift objects with his right hand; he is unable to sleep at night due to pain; he takes medication for pain, HIV, blood thinners, and mental issues; and he experiences side effects from his medications that prevent him from sweeping the floor. (Tr. 29)  The ALJ further noted Plaintiff testified that he has difficulty seeing and is in constant pain; he has suicidal ideations; he denied using cocaine on a regular basis, but stated he used drugs when depressed (Tr. 29, 60); and he indicated he received mental health treatment from Fulton County.  (Id.).

### 3.    The ALJ's Credibility Finding

After considering the evidence, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, however, his statements concerning the intensity, persistence, and the limiting effects of those symptoms were not entirely credible for the reasons explained in her decision. (Tr. 29).  The ALJ explained that Plaintiff's testimony and description of his symptoms and limitations was generally inconsistent and unpersuasive. (Id.). The ALJ further explained that Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible in light of Plaintiff's description of his activities and

18

lifestyle. The ALJ pointed to Function Reports wherein Plaintiff acknowledged that he was able to independently perform basic hygiene such as dressing, bathing, grooming, using the toilet, feeding himself, performing light household chores, shopping for groceries, and handling his own financial affairs. (Tr. 29). The ALJ noted Plaintiff's description of his daily activities were not as limited to the extent one would expect given his complaints of disabling symptoms and limitations. (Tr. 24). The ALJ indicated that despite Plaintiff's allegations of polysubstance abuse and depression, he was able to perform light household chores, handle his own financial affairs, and shop in stores for groceries.[4]

Plaintiff takes issue with the ALJ's reliance on his activities of daily living to discredit his allegations [of disabling impairments] and argues it was improper for the ALJ to do so because his own report of his activities and lifestyle was not inconsistent with his allegations or testimony. Despite Plaintiff's argument, he admits that he indicated in his Function Reports that he could dress, bathe, groom, use the toilet, and feed himself. (Pl.'s Br. 20). Plaintiff contends, however, that the ALJ mis-characterized his limited activities of daily living because he also stated he had difficulty performing these tasks. (Id.). Similarly, Plaintiff does not dispute the ALJ's observation that he could perform "light household chores." Yet, Plaintiff alleges the ALJ erred because he also reported "other than ironing," which he did not do often, he could not perform

---

[4] The ALJ relied on these same responses on the Function Reports in finding Plaintiff had mild restrictions in daily activities. (Tr. 24).

household chores. (Pl.'s Br. 20). (emphasis added).  Plaintiff's ability to iron appears to this Court to be consistent with the ALJ's observation that Plaintiff can perform light household chores. That Plaintiff may have also reported he had difficulty performing some daily activities does not mean that he was unable to perform them or that the ALJ was precluded from considering them to discount his credibility.

Additionally, the ALJ's credibility determination is supported by other evidence in the record including the opinions of Drs. Turk, Glass and Telford-Tyler.[5]  On January 17, 2011, Dr. Turk opined Plaintiff did not require any assistance in activities of daily living or in handling his finances.[6]  (Tr. 27, 866).  Furthermore, on December 11, 2011, Dr. Glass considered Plaintiff's activities of daily living, including his ability to perform "limited household chores (laundry ironing)" as a factor in opining that the alleged severity of Plaintiff's symptoms on his ability to function was not consistent with the

---

[5] Because the ALJ and Plaintiff have referred to the opinions of Drs. Glass, Turk, and Telford-Tyler, the undersigned has reviewed the entirety of their opinions. Moreover, the undersigned may recite facts based upon the Court's independent review of the record.  A reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985); see also Getty ex rel. Shea v. Astrue, No. 2:10-CV-725-FTM-29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); Salisbury v. Astrue, No. 8:09-CV-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).

[6] Dr. Turk also reported that Plaintiff's vision field was inconsistent with his clinical presentation.  (Tr. 866).  Dr. Turk further reported that Plaintiff "has a very marginal representation suggesting he has no problems with maneuvering, retrieving his belongings,  or exit[ing] via a door in the dimly lit, unfamiliar room."  (Id.).

AO 72A
(Rev.8/82)

medical evidence.  (Tr. 27, 877).  Similarly, on April 27, 2012, Dr. Telford-Tyler opined that Plaintiff was capable of independent activities of daily living.  (Tr. 28, 1062).

While Plaintiff's ability to engage in some everyday activities does not disqualify him from receiving disability benefits, Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), the ALJ may properly consider those daily activities, among the other evidence of record, in determining whether Plaintiff is entitled to disability benefits.  Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam); see also, 20 C.F.R. § 416.929(c)(3)(i) (explaining daily activities are a relevant factor when evaluating a claimant's symptoms); Conner v. Astrue, 415 F. App'x 992, 995 (11th Cir. 2011) ("A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints.") (citation omitted).  Here, the ALJ properly considered Plaintiff's ability to perform daily activities in conjunction with other evidence in determining Plaintiff's allegations were not entirely credible.

4.     The ALJ's Reliance on Plaintiff's Lack of Surgical Treatment

Plaintiff also argues the ALJ erred by relying on the fact that he did not have surgical treatment for his physical impairments.  Plaintiff contends that because he had bullet fragments near his spine, which allegedly were the primary cause of his back impairment and limitations, and because of his residual arm issues from a gunshot wound, it was inappropriate for the ALJ to consider his lack of surgery as a reason for rejecting his subjective complaints.  In evaluating Plaintiff's credibility, the ALJ noted that Plaintiff had not generally received any surgery for his physical impairments after the

21

alleged onset date.   (Tr. 29).   The record supports the ALJ observation.  Plaintiff, however, mischaracterizes the ALJ's reasoning.  The ALJ did not form a medical opinion or recommend that Plaintiff undergo surgery as Plaintiff argues.  Instead, it appears to this Court that the ALJ was simply observing that despite Plaintiff's allegations of disabling pain and other physical limitations arising from his impairments, Plaintiff's treatment afer the alleged onset date was conservative and his treatment notes reflect physical examinations with essentially normal medical findings.  For example, the ALJ observed that treatment notes from Grady Hospital reveal that Plaintiff experienced nausea, vomiting, gastric and abdominal pain later determined to be GERD.  (Tr. 27).  Plaintiff rated his pain levels as a six out of ten, with ten being the worse pain; however, the ALJ noted Plaintiff's treatment notes classified his pain levels as moderate and suggested his chest pain might be caused by GERD, as his echocardiographic findings were normal. (Id.).  The ALJ also observed that Plaintiff did not undergo any surgical treatment for his GERD impairment; instead, Plaintiff was prescribed medications that included, but were not limited to Vicodin and Percocet.  (Id.).  Similarly, despite Plaintiff's complaints of neck pain, the ALJ observed Plaintiff did not experience any decreased range of motion in his cervical spine and he was not in any acute distress.  (Id.).  The ALJ also observed that a physical examination of Plaintiff was essentially normal as there were little to no abnormalities in his cardiovascular, respiratory, or neurological systems; he was able to climb on and off the examination table without difficulty even though he experienced decreased motor strength in his upper and lower extremities; and he was able to ambulate

22

without the use of an assistive device.  (Id.).  The ALJ further observed that Plaintiff reported to Grady Hospital with complaints of back pain, but on October 5, 2012, an objective physical examination revealed a normal range of motion in his neck as well as his other joints; his neurological examination was normal; and there was no evidence of edema, swelling, deformity or muscle spasms.  (Id.).  When Plaintiff returned for a followed up on October 19, 2012, with complaints to back pain, it was noted that he was not a surgical candidate; instead, Plaintiff was referred to his primary care physician and referred to physical therapy.  (Tr. 1508).  Moreover, on July 2, 2014, Plaintiff presented to Grady with complaints of right side weakness, suspected of being a simple partial seizure, but an electroencephalogram (EEG) of Plaintiff was relative normal.  (Tr. 28). The ALJ also noted that on July 15, 2014, Dr. Punita Kaveti, a treating physician, indicated that Plaintiff continued to have some residual weakness in his right hand; he would not be able to function properly until he gained some strength back; he was getting physical therapy for the same condition; and his improvement will determine whether he can be cleared to go back to work.  (Tr. 2138).  Finally, although Plaintiff alleged he was completely blind in his left eye, Dr. Turk noted Plaintiff was not a candidate for surgery. (Tr. 27, 866).  Thus, it was proper for the ALJ to rely on Plaintiff's conservative course of medical treatment (such as physical therapy) or normal findings on physical examinations wherein no surgery was recommended when rejecting Plaintiff's complaints of pain and other symptoms.  The ALJ may consider measures taken, or not taken, by a claimant to relieve symptoms.  See 20 C.F.R. § 416.929(c)(3)(v).

The Eleventh Circuit has stated "[a] doctor's conservative medical treatment for

23

a particular condition tends to negate a claim of disability." <u>Sheldon v. Astrue</u>, 268 F. App'x 871, 872 (11th Cir. 2008) (citing <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1078 (11th Cir. 1996)); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1040 (9th Cir. 2008) (describing physical therapy and anti-inflammatory medication as conservative treatment); <u>see also</u> <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining that the ALJ properly discounted complaints of disabling pain where, among other factors, no physician opined that plaintiff was disabled or corroborated plaintiff's allegations of disabling incapacity). Thus, Plaintiff's conservative treatment and lack of support from any of Plaintiff's treating physicians or any consultant for Plaintiff's alleged disabling impairments would support the ALJ's decision to not fully credit the extent of Plaintiff's subjective complaints.

5.     <u>The ALJ's Reliance on Plaintiff's Lack of Mental Health Hospilization</u>

Finally, Plaintiff argues the ALJ erred by relying on the Plaintiff's lack of mental health hospitalization to discredit Plaintiff's allegations of disabling impairments. Contrary to Plaintiff's assertion, the ALJ properly considered Plaintiff's lack of mental health treatment, after he stopped using drugs, in conjunction with other evidence in determining Plaintiff's allegations were not entirely credible. The ALJ initially observed that there were very few treatment records of Plaintiff's depression and polysubstance abuse in remission. (Tr. 28). The ALJ noted Dr. Telford-Tyler opined that Plaintiff did not have any marked or extreme limitations due to his mental impairments. (<u>Id.</u>). Dr. Telford-Tyler also noted that Plaintiff's Grady treatment records indicate that prior to

24

January 2012, Plaintiff had no psychological issues, and that Plaintiff's cocaine abuse depression was possibly substance induced.  (Tr. 1062).  Furthermore, a medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citation omitted). Gibbs v. Barnhart, 130 F. App'x. 426, *431-432, 2005 WL 1052858,**5 (11th Cir. 2005).

Here, based on the scarcity of treatment records for Plaintiff's mental impairments and because other evidence supports the ALJ's decision to discount Plaintiff's credibility, this Court finds no reversible error.

6.   The ALJ's Reliance on Plaintiff's Refusal to Take His Medication

Finally, Plaintiff argues the ALJ's assertion that Plaintiff failed to take his medication was factually inaccurate.  Plaintiff, however, admits that he initially refused to take anything other than Vistaril, he agreed by his next visit to begin taking Lexapro after failing to experience any improvement in his symptoms.  (Tr. 1622, 1624). Contrary to Plaintiff's assertion, Plaintiff testified at his hearing that he refused to take his medication for depression because it would cause him to twitch. (Tr. 29).  As the ALJ noted "the evidence indicates that Plaintiff failed to assist in is own well-being by not taking his medications and prescribed."  (Id.).  The ALJ also noted there was evidence that Plaintiff ran out of his medications on several occasions; and that on October 10, 2012, Plaintiff refused to take psychotropic medication even though he was advised about the risk of not taking medications.  (Id.).  Moreover, the ALJ did not substantially base her decision on Plaintiff's noncompliance.  Instead, the ALJ focused on the

25

inconsistencies between Plaintiff's subjective allegations, and Plaintiff's medical history.

Non-compliance with prescribed treatment regimens, such as medications, without good cause will result in the denial of disability benefits applications. See 20 C.F.R. § 416.930.  Social Security Ruling 96-7p provides:

> [T]he individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the [ALJ] must not draw any inference about an individual's symptoms and their functional effect from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain [the individual's noncompliance].

SSR 96-7p, 1996 WL 374186, at * 7 (1996) (emphasis added).  SSR 96-7p further provides that an individual's inability to afford medical treatment or to gain access to medical services are good reasons for not complying with prescribed medical treatment. Id. at *8; see also Vargas v. Comm'r of Soc. Sec., No. 6:13-cv-1683-Orl-41TBS, 2015 WL 328110, at *11 (M.D. Fla. Jan. 26, 2015) (same).  Here, there are no allegations that Plaintiff was unable to afford his medication.  Plaintiff simply either refused to take his medications, did not take them as prescribed, or he ran out of them on multiple occasions. (Tr. 29, 769, 11576, 1414, 1422, 1477, 1496).

Finally, even if some of the reasons cited by the ALJ were not supported by substantial evidence, the fact that substantial evidence supports the decision as a whole is cause to affirm that decision.  See Wilson v. Comm'r of Soc. Sec., 500 F. App'x 857, 859-60 (11th Cir. 2012) (noting that remand was unwarranted even if the ALJ cited an improper finding to support his adverse credibility determination because there was

sufficient evidence within the record to support the ALJ's other reasoning for his adverse credibility determination); <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003) (holding that an ALJ's failure to consider a claimant's inability to afford treatment did not constitute reversible error when the ALJ did not rely primarily on a lack of treatment to find that the claimant was not disabled).

Accordingly, this Court cannot conclude that the ALJ erred in assessing Plaintiff's credibility.  Instead, the Court finds the ALJ properly considered and weighed the evidence of record, she properly provided reasons for discounting Plaintiff's subjective allegations, and substantial evidence supports the ALJ's credibility and her finding Plaintiff could work and was not disabled prior to November 17, 2012.

## VII.   <u>CONCLUSION AND RECOMMENDATION</u>

For the reasons stated above, it is hereby **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, and this action be **DISMISSED WITH PREJUDICE**.  As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned.  Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this ___20___ day of February,  2018.


/s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)